UNITED STATES of America, Plaintiff,

v.

$175,918.00 IN UNITED STATES CURRENCY, Defendant-in-rem.

No. 89 Civ. 3614 (JES).

United States District Court,
S.D. New York.

Feb. 4, 1991.

Otto G. Obermaier, U.S. Atty. S.D. New York, New York City (Bart G. Van De Weghe, Asst. U.S. Atty., of counsel), for U.S.

Blas Monterrey, Ossining, N.Y., pro se.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

The United States of America brings this forfeiture action pursuant to 21 U.S.C. § 881(a)(6) (1988) to forfeit monies that the government alleges were received through narcotics trafficking. Presently pending before the Court is the government's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

On September 8, 1988, Blas Monterrey, the claimant to the defendant-in-rem currency, was arrested following an investigation by the United States Drug Enforcement Administration ("DEA") into reports which indicated that he and his wife, Lazara Hernandez, were distributing multi-kilogram quantities of cocaine from an apartment located at 559 West 172nd Street in New York City. *See* Affidavit of Special Agent Cynthia Jovanelly at ¶¶ 5–6 ("Jovanelly Aff.").[1] The Complaint, which was verified by Agent Jovanelly and incor-

porated by reference into her affidavit, alleged that on September 6, 1988, Monterrey sold one-eighth of a kilogram of cocaine to an undercover agent and agreed to sell a full kilogram to the agent at a later time. *See* Complaint at ¶¶ 4–7 (annexed to Jovanelly Aff. at Ex. 1). Two days later, on September 8, 1988, the undercover agent returned to the apartment to complete the purchase of the kilogram of cocaine but was unable to do so because he was told that Monterrey was not there. *See id.* at ¶ 8.

After the undercover agent left the premises, a team of DEA agents, including Agent Jovanelly, executed a warrant for a search of the apartment and arrested Monterrey and Hernandez. The agents recovered approximately eight kilograms of cocaine, several weapons, narcotics related items including a scale and packaging materials, and the defendant-in-rem currency. *See id.* at ¶¶ 9–10; Jovanelly Aff. at ¶ 5 & Ex. 2. Agent Jovanelly further states in her affidavit that the currency was packaged in a manner consistent with funds seized in other narcotics investigations in which she has participated. *See* Jovanelly Aff. at ¶ 5.

At the time of his arrest, Monterrey was on probation for a previous state narcotics violation. *See* Jovanelly Aff. at ¶ 8. Moreover, following his arrest, Monterrey admitted to DEA agents that he was responsible for the drugs and money in the apartment and that he was involved in distributing cocaine for a Colombian cocaine distributing organization. *See* Jovanelly Aff. at ¶ 6 & Ex. 3.

Monterrey and Hernandez were indicted on state narcotics charges. On November 16, 1988, Monterrey pleaded guilty to those charges. He was sentenced to eight years-to-life imprisonment and is presently incarcerated. *See id.* at ¶ 7. His wife, Hernandez, also pleaded guilty on February 1, 1989 and was sentenced to four years-to-life imprisonment. *See id.*

---

1. Agent Jovanelly's Affidavit states that Monterrey was arrested on September 9, 1988. However, both the Complaint and the Government's Statement Pursuant to Local Rule 3(g) state that he was arrested on September 8, 1988.

The government commenced this forfeiture action on May 23, 1989, alleging that the defendant-in-rem currency was furnished or intended to be furnished in exchange for a controlled substance, constituted proceeds traceable to an exchange of a controlled substance and/or was intended to be used to facilitate a violation of title 21 of the United States Code and was therefore subject to forfeiture. *See* Complaint at ¶¶ 11–12; 21 U.S.C. § 881(a)(6) (1988). The Government mailed a notice that the action had been commenced and copies of the complaint to both Monterrey and Hernandez which advised them that they had the right to contest the forfeiture. *See* Declaration of AUSA Bart G. Van De Weghe at Ex. 1.

By letter dated June 6, 1989, Monterrey wrote to the Court requesting an extension of time to file a notice of claim on the ground that he was attempting to obtain counsel. The government objected to this request stating that Monterrey's defenses were meritless but failed to specify how it would be prejudiced by the request. *See* Letter of AUSA Van De Weghe to Blas Monterrey (June 14, 1988). Moreover, Monterrey's letter clearly stated that he intended to contest forfeiture of the funds.

In addition, on July 13, 1989, Monterrey filed a sworn document entitled "Opposition to U.S. Attorney's Action for Forfeiture of U.S. Currency" ("Opposition") which conceded forfeiture of $100,000 but maintained that $75,918 was not subject to forfeiture. Monterrey's Opposition set forth both the legal and factual basis for that claim. Since Monterrey conceded forfeiture of a portion of the funds, the Court entered a default judgment as to $100,918 and the government filed the instant motion as to the balance.[2]

---

**2.** Monterrey's Opposition conceded forfeiture of $100,000, but varied in its statements regarding the amount of currency he contested. *Compare* Opposition at 3 (claiming that $75,918.00 of the defendant currency is not related to narcotics activity) *with id.* at 10 (requesting return of $75,000.00). Moreover, Monterrey did not contest the amount of the default judgment in his memorandum of law in opposition to the government's motion.

**3.** Rule C(6) provides in relevant part:

## DISCUSSION

The government raises three arguments: (1) that the claimant's defense is barred because he has not filed a notice of claim as required by Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims; (2) that it has demonstrated probable cause for forfeiture thereby shifting the burden of proving that the funds are not subject to forfeiture to the claimant; and (3) that Monterrey cannot raise any genuine issues of material fact on his defense that the funds were acquired from a legitimate source.

### The Timeliness Claim

■ The government argues that Monterrey lacks standing to contest the forfeiture because he has not complied with Rule C(6) of the Supplemental Rules For Certain Admiralty and Maritime Claims which requires that a claimant in a forfeiture proceeding file a sworn notice of claim within ten days after service of the complaint and an answer within twenty days after the filing of the notice of claim.[3] The government is correct insofar as it argues that the filing of a sworn claim is essential to confer statutory standing upon a claimant in a forfeiture action. *See United States v. United States Currency in the amount of $103,387.27*, 863 F.2d 555, 560 (7th Cir. 1988); *United States v. United States Currency in the amount of $2,857.00*, 754 F.2d 208, 213 (7th Cir.1985). This rule is designed to provide the government with timely notice of a claimant's interest in contesting the forfeiture and, by requiring a sworn claim, to deter the filing of false claims. *See United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1435–36 (9th Cir.1985).

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

However, numerous courts have held that "where putative claimants have placed the court and the government on notice of their interest in the property and their intent to contest the forfeiture, courts will grant extensions of time, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances." *$103,387.27, supra,* 863 F.2d at 562; *accord United States v. One Urban Lot located at 1 Street A–1,* 885 F.2d 994, 999–1001 (1st Cir.1989); *1982 Yukon Delta Houseboat, supra,* 774 F.2d at 1435–36; *United States v. One 1979 Mercedes 450SE,* 651 F.Supp. 351, 353 (S.D.Fla. 1987) (citing other cases); *see also United States v. Property located at 4492 S. Livonia Road,* 889 F.2d 1258, 1262 (2d Cir.1989) (stating that where a claimant has shown a sufficient interest in the property through a motion and affidavits, technical noncompliance with the rules governing the filing of claims may be excused). Thus, in *One Urban Lot, supra,* the First Circuit held that a default judgment must be vacated because a verified answer, which was filed less than a month after the action commenced and which contained all of the information necessary for a claim, should have been considered as a claim under the Rule and the deadline for its filing extended so it satisfied the time requirements of Rule C(6). *See* 885 F.2d at 1001. Similarly, in *$103,387.27, supra,* the Seventh Circuit held that a district court abused its discretion in striking a claimant's answer and refusing to grant a request for an extension of time to file an amended claim because the court failed to consider the absence of prejudice to the government in view of the timely, albeit unverified, notice of the claim that it received and the fact that there was no serious dispute that the claimant was an owner of the property. *See* 863 F.2d at 562–63.

■ This case presents a clear situation in which the Court should exercise its discretion to grant claimant an extension of time to correct the defects in his claim and answer. Monterrey is incarcerated and is proceeding *pro se.*[4] Despite these obstacles, he has been diligent in pursuing his rights throughout the litigation, has communicated his interest in the currency to the court and the government, and has done all that he could reasonably be expected to do toward that end. *Cf. United States v. United States Currency in the amount of $7,531,* 716 F.Supp. 92, 93 (E.D. N.Y.1989) (citing *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989)). Moreover, since the government had notice of Monterrey's intent to contest the forfeiture from his June 6, 1988 letter and does not seriously dispute that he has a sufficient ownership interest in the property to be a proper claimant, the government will not be prejudiced by this extension nor will the policies that underlay Rule C(6) be impaired in any way. *See One Urban Lot, supra,* 885 F.2d at 1001; *$103,387.27, supra,* 863 F.2d at 562; *1982 Yukon Delta, supra,* 774 F.2d at 1436.

Accordingly, the Court construes Monterrey's sworn opposition, filed on July 13, 1989, as a notice of claim under Rule C(6) and, *nunc pro tunc,* extends the time for filing such notice of claim to July 13, 1989, the date when it was filed. However, Rule C(6) requires both a verified claim and an answer. The Court will therefore direct that Monterrey file a verified Answer within 60 days of the date of this Order.

*Probable Cause*

■ In order to forfeit narcotics proceeds, the government must sustain its initial burden of showing that it had probable cause for the forfeiture. *See United States v. Banco Cafetero Panema,* 797 F.2d 1154, 1160 (2d Cir.1986); *United States v. $2500.00 in United States Currency,* 689 F.2d 10, 12 (2d Cir.1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984); 19 U.S.C. § 1615 (1988); *see also* 21 U.S.C. § 881(d) (incorporating procedures for customs forfeitures into forfeiture proceedings under title 21). To satisfy this requirement, the govern-

**4.** Monterrey originally requested an extension of time in which to file a claim because he was attempting to obtain counsel. However, he has indicated that he was unable to do so for financial reasons.

ment must have reasonable grounds, which rise above the level of mere suspicion, to believe that certain property is subject to forfeiture. *See 4492 S. Livonia Road, supra,* 889 F.2d at 1267; *Banco Cafetero, supra,* 797 F.2d at 1160. In this case, probable cause may be shown by evidence which links the funds to narcotics transactions, but there need not be a demonstrable connection to any particular transaction.[5] *See id.*

■ Probable cause is clearly present on the record here, which includes evidence of Monterrey's involvement in large-scale narcotics trafficking. Indeed, the circumstances surrounding the seizure of the money found in Monterrey's apartment in connection with a large quantity of narcotics, drug paraphernalia, and weapons; the DEA agent's statement that the money was packaged in a manner consistent with other narcotics investigations in which she has participated; the evidence that Monterrey had sold narcotics to an undercover agent and agreed to sell a larger amount to the agent at a later time; Monterrey's incriminating statements and his guilty plea; and the fact that Monterrey was on probation for narcotics related crimes at the time of his arrest are more than sufficient to establish probable cause. *Cf. United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984); *$2,500, supra,* 689 F.2d at 16.

*Claimant's Defense*

■ Since the government has demonstrated that there is probable cause for the forfeiture, the burden shifts to the claimant to prove by a preponderance of the evidence that the funds are not subject to forfeiture under § 881(a)(6). *See Banco Cafetero, supra,* 797 F.2d at 1160; *$2,500, supra,* 689 F.2d at 12; *United States v. One 1982 Porsche 928,* 732 F.Supp. 447, 452 (S.D.N.Y.1990); 19 U.S.C. § 1615.

■ In his sworn opposition, Monterrey asserts that the contested portion of the funds, $75,000.00, was acquired from a legitimate source and therefore is not subject to forfeiture. Specifically, he claims that $50,000 results from his life savings from 30 years of continuous employment, and an additional $25,000 came from the sale of a business. Monterrey further states that over the years he held several positions in building maintenance and as a rental agent and therefore lived rent-free and that he did not trust banks and therefore kept all his money in the house.[6] These claims, if believed by the trier of fact, would constitute a defense to forfeiture of those funds.

Whether the contested funds came from a legitimate source, as Monterrey claims, is a question of fact. Therefore, summary judgment is denied because Monterrey's defense raises credibility issues as to a material issue of fact, which cannot be resolved on a motion for summary judgment.[7] *See Herman v. Provident Mut. Life Ins. Co.,* 886 F.2d 529, 536 (2d Cir. 1989); *Knight v. U.S. Fire Ins. Co.,* 804

---

**5.** It is also well-settled that the Court may rely upon hearsay statements in an affidavit, such as those in the Jovanelly affidavit, in assessing whether the government had probable cause for the forfeiture. *See United States v. Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 101–02 (2d Cir.1990); *4492 S. Livonia Road, supra,* 889 F.2d at 1267–68. Such reliance is especially appropriate where, as here, substantial portions of Agent Jovanelly's affidavit are based upon her personal knowledge as an agent involved in the investigation. *Cf. Livonia Road, supra,* 889 F.2d at 1268–69.

**6.** Monterrey also asserts that he is is attempting to locate documents which would substantiate these claims but is unable to do so because he

has changed his residence since he has been incarcerated.

**7.** The cases relied upon by the government are inapposite. In both *United States v. $41,305.00 in Currency and Traveler's Checks,* 802 F.2d 1339, 1343–45 (11th Cir.1986) and *United States v. $83,320 in United States Currency,* 682 F.2d 573, 576–78 (6th Cir.1982), forfeiture of the defendant funds was granted to the government after an evidentiary hearing. And in *United States v. One 1975 Mercedes 280S,* 590 F.2d 196, 199–200 (6th Cir.1978), summary judgment in favor of the government was properly granted because the claimant had failed to submit any evidentiary materials in opposition to the government's motion as required by Fed.R. Civ.P. 56(e).

F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## CONCLUSION

For the reasons set forth above, the government's motion for summary judgment is granted in part and denied in part. Monterrey shall file a verified answer within 60 days of the date of this Memorandum Opinion and Order. Counsel for the government shall appear at a Pre–Trial Conference on March 22, 1991 in Courtroom 129 at 10:30 AM in order to schedule a Trial date. Since Monterrey is incarcerated he will not have to appear at that Conference.

IT IS SO ORDERED.